**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| _____ | : | |
| DANIEL MARKERT, individually and as | : | |
| Executor for the | : | |
| ESTATE OF MICHAEL MARKERT, Deceased, | : | |
| et al., | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE PNC FINANCIAL SERVICES GROUP, INC., | : | NO. 11-4918 |
| f/k/a/ PNC FINANCIAL CORPORATION, | : | |
| d/b/a PNC, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                        **NOVEMBER 14, 2011**

Presently before the Court are a Motion to Dismiss filed by the Defendant, the PNC

Financial Services Group, Inc., formerly known as PNC Financial Corporation, doing business as

PNC ("Defendant"), and a Motion for Leave to File an Amended Complaint filed by Daniel

Markert, individually and as Executor for the Estate of Michael Markert, deceased (hereafter, the

"Decedent"), Joseph Markert, and Thomas Markert (collectively, "Plaintiffs").  For the reasons

stated below, we will grant the Defendant's Motion to Dismiss and we will grant the Plaintiffs'

Motion for Leave to File an Amended Complaint with instructions.

## I.        FACTS

Prior to his death on June 6, 2008, the Decedent was employed by the Defendant.

(Compl. ¶¶ 5, 8.)  The Decedent began to participate in the Defendant's Incentives Savings Plan

(hereafter, "401K") in the third quarter of 1983.  (Id. ¶ 8.)  On January 1, 1989, the 401K became

a contributory plan.[1]  (Id.)  On the date of the Decedent's passing, his 401K was valued at $405,

941.24.  (Id. ¶ 9.)  The Decedent designated Plaintiffs as the beneficiaries of the 401K plan,

entitling each to a one third share.  (Id. ¶¶ 11-12.)  Plaintiffs, however, did not receive their

shares of the 401K promptly after the Decedent's death.  (Id. ¶ 13.)  Rather, the Plaintiffs

received their shares six months after the Decedent's death.  (Id.)  When Plaintiffs finally

received them, they were transferred to three bank accounts established by the Defendant.  (Id.)

Each bank account required access passwords created and sent by the Defendant.  (Id.)  The

Decedent also participated in the Defendant's Employee Stock Purchase Plan ("ESPP").  Under

the ESPP, the Defendant established an account with its transfer agent, Computershare Investor

Services in the Decedent's name.  (Id. ¶ 14.)  As of June 17, 2008, 511 shares of the Defendant's

stock were held in safekeeping with the transfer agent.  (Id. ¶ 15.)  Plaintiffs allege that they are

each entitled to a one third share of the ESPP along with any residual cash balance associated

with the ESPP.  (Id. ¶ 16.)  On the date of the Decedent's death, the stock was worth $31,495.41.

(Id. ¶ 17.)  The Defendant directed the Plaintiffs to contact its employee if they had questions

regarding the ESPP information provided to them.  (Id. ¶ 18.)  Thereafter, Plaintiffs requested

that the Defendant transfer the shares to them individually.  (Id. ¶ 19.)  On or about October 17,

2008, the Defendant distributed the shares into three separate accounts maintained by the

---

[1] Because the Plaintiffs describe the 401K as a "contributing plan" and because they
allege that the Plans were maintained in an individual account, we assume that the Plans at issue
were defined contribution Plans.  A "defined contribution plan" or "individual account plan"
promises the participant the value of an individual account at retirement, which is largely a
function of the amounts contributed to that account and the investment performance of those
contributions.  29 U.S.C. § 1002(34).  A "defined benefit plan, by contrast, generally promises
the participant a level of retirement income, which is typically based on the employee's years of
service and compensation.  § 1002(35).

Defendant for the Plaintiffs.  (Id. ¶ 20.)

The Decedent also participated in the Defendant's Pension Plan ("Pension").  (Id. ¶ 21.) As of June 11, 2008, a pre-retirement death benefit in the estimated amount of $135,322.01 was to be paid to the Decedent's Estate.  (Id. ¶ 22.)  Around August 3, 2008, Daniel Markert received correspondence from the Defendant indicating that it would disburse the Pension benefit on or about September 1, 2008.  (Id. ¶ 23.)  Plaintiffs allege that the Defendant incorrectly issued the disbursement check twice before the correct amount was received and deposited by the Executor, Daniel Markert.  (Id. ¶ 24.)

Plaintiffs claim that the Defendant failed to make a timely and efficient distribution of the assets under the 401K, ESPP, and Pension plans (collectively, the "Plans") as they requested it to do.  (Id. ¶ 28.)  As a result, Plaintiffs claim that the market value of the Plans experienced a steep and significant decline.  (Id. ¶ 28.)[2]

Plaintiffs commenced this action in the Philadelphia County Court of Common Pleas by filing a writ of summons in May of 2010.  On July 14, 2011, Plaintiffs filed a six-count Complaint against the Defendant alleging state law claims for breach of contract (Count I), breach of fiduciary duty (Count II), negligence (Count III), conversion (Count IV), detrimental reliance/promissory estoppel (Count V), and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count VI).

On August 1, 2011, the Defendant removed the action to this Court alleging that the Plaintiffs' claims are preempted by the Employee Retirement Income Security Act of 1974

---

[2] There are two consecutive paragraphs numbered "28" in their Complaint.  This paragraph refers to the second of such paragraphs.

("ERISA"), 29 U.S.C. § 1001, et seq.  (Def.'s Not. Removal ¶¶ 1, 15-19.)  On August 8, 2011,

the Defendant filed a motion to dismiss Plaintiffs' Complaint.  Specifically, the Defendant

argued that the Plaintiffs' state law claims were preempted by ERISA, Plaintiffs' suit was

premature because they did not exhaust their administrative remedies, and Plaintiffs lacked

standing because they did not suffer an "injury-in-fact" because they received the benefits.  (Mot.

to Dismiss ¶¶ 4-6.)  Apparently, Plaintiffs were unable to amend their Complaint within the 21

day deadline required by Federal Rule of Civil Procedure 15[3] because they needed to acquire

counsel familiar with ERISA practice.  (Pltfs.' Mot. to File Am. Compl. ¶ 5.)  The Defendant

agreed to extend the time to respond to its Motion to Dismiss.  (Id. ¶ 6.)  On September 12, 2011,

the Plaintiffs filed a Motion for Leave to File Amended Complaint with an attached Proposed

Amended Complaint. (Doc. No. 7.)  On September 26, 2011, the Defendant filed a Response in

Opposition to Plaintiffs' Motion for Leave to File Amended Complaint.  (Doc. No. 9.)  The

parties disagree about whether the filing of an amended complaint is a response to a motion to

dismiss.  (Pltfs.' Mot. to File Am. Compl. at 1) (Plaintiffs "move[] this Court for leave to file an

---

[3] Federal Rule of Civil Procedure 15(a)(1) provides:

(a) Amendments Before Trial
    (1) Amending as a Matter of Course
    A party may amend its pleading once as a matter of course within:
        (A) 21 days after serving it, or
        (B) if the pleading is one to which a responsive pleading is required,
        21 days after the service of a responsive pleading or 21 days after
        service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1).  Although Plaintiffs do not specify the subsection to which they refer,
we assume that they refer to Fed. R. Civ. P. 15(a)(1)(B), because the stipulation extended the
time within which the Plaintiffs could respond to the Defendant's Motion to Dismiss, a motion
made under Rule 12(b).

Amended Complaint in response [sic] the pending Motion to Dismiss Complaint"), (Def.'s Resp. at 2) ("Plaintiffs did not respond to [Defendant's] Motion to Dismiss.  Rather . . . they moved to file an amended complaint pursuant to Fed. R. Civ. P. 15.").  Notwithstanding this dispute, the Defendant argues that we should deny the Plaintiffs leave to file the Proposed Amended Complaint because the amendments are futile.  On October 21, 2011, the Plaintiffs submitted a Reply Memorandum (Doc. No. 10).[4]

## II.    STANDARDS OF REVIEW

### A.    Leave to Amend

Federal Rule of Civil Procedure 15(a)(1)(B) allows a plaintiff to amend a complaint once as a matter of course within twenty-one days after the service of a responsive pleading if the pleading is one to which a responsive pleading is required or twenty-one days after service of a motion under Rule 12(b), whichever is earlier.  Fed. R. Civ. P. 15(a)(1)(B).  Otherwise, a party may amend its pleading only with the opposing party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  Rule 15 provides that courts should freely give leave to amend when justice so requires.  Id.

The Third Circuit adopts a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities."  Lorah v. Home Helpers Inc. Del. Respite, No. 10-237-SLR, 2011 WL 4464540, at *5 (D. Del. Sept. 26, 2011) (citing Dole v. Arco Chem. Co., 921 F.2d 484, 486-87 (3d Cir. 1990)).  Amendment, however, is not automatic.  Id. (citing Dover Steel Co., Inc. v. Hartford Accident and Indem., 151 F.R.D. 570,

---

[4] The Reply was untimely submitted and we did not grant the Plaintiffs leave for this submission.  Additionally, nothing contained in the Reply alters our decision as we have already addressed the arguments contained therein.  Thus, we will not consider the Plaintiffs' Reply.

574 (E.D. Pa. 1993)).  "Leave to amend should be granted absent a showing of 'undue delay, bad

faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of the

allowance of the amendment, futility of the amendment, etc.'"  Id. (quoting Foman v. Davis, 371

U.S. 178, 182 (1962)).

In this case, the Defendant's singular argument against granting the Plaintiffs leave to

amend is that their Proposed Amended Complaint fails to state any cognizable causes of action

and is, therefore, futile.  Futility of amendment occurs when the complaint, as amended, does not

state a claim upon which relief can be granted.  Id. (citing In re Burlington Coat Factory Sec.

Litig., 114 F.3d 1410, 1434 (3d Cir. 1997)).  The standard for deciding whether claims are futile

for the purpose of granting leave to amend a complaint is the same as a motion to dismiss.

Manning v. Haggerty, No. 11-cv-302, 2011 WL 4527818, at *2 n.3 (M.D. Pa. Sept. 28, 2011)

(citing Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir. 1983)).

**B.     Motion to Dismiss**[5]

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency

of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), the

defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which

relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744,

750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's

---

[5] Because the Defendant opposes the Plaintiffs' Motion for Leave to File an Amended
Complaint on grounds of futility and the standard for deciding whether claims are futile for the
purposes of granting leave to amend a complaint is the same as a motion to dismiss, we include
the standard for a motion to dismiss.

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007).  Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8).  Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

Notwithstanding Twombly, the basic tenets of the Rule 12(b)(6) have not changed.  The Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 U.S. Dist. LEXIS 30230, at *6 (E.D. Pa. Apr. 8, 2009).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231.  Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

7

Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

### A.   Plaintiffs' First Complaint

The Plaintiffs' First Complaint asserts causes of action alleging state law claims for

breach of contract (Count I), breach of fiduciary duty (Count II), negligence (Count III),

conversion (Count IV), detrimental reliance/promissory estoppel (Count V), and violations of the

Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count VI).  The Defendant

removed the action here claiming that the resolution of the Plaintiffs' claims required

interpretation of federal law, i.e, ERISA.  The Defendant then filed a Motion to Dismiss the First

Complaint in its entirety arguing that the claims were pre-empted by ERISA, that the Plaintiffs

had failed to exhaust their administrative remedies, and that the Plaintiffs lacked standing

because they had not suffered an "injury-in-fact."  (Mot. to Dismiss ¶¶ 3-7.)  The Defendant, in

its brief in support of the Motion to Dismiss, also argued that the Plaintiffs had not stated claims

under ERISA and that the ESPP Plan was not governed by ERISA and we should, therefore,

decline to exercise jurisdiction over those claims.

As we stated above, the Plaintiffs' only "response" has been to submit a Motion for Leave

to File an Amended Complaint with an attached Proposed Amended Complaint.  The Proposed

Amended Complaint contains only three counts: breach of fiduciary duty by the individual

plaintiffs (Count I); breach of fiduciary duty by the Decedent's estate (Count II); and breach of

the duty to inform (Count III).  Each of the new counts are founded on ERISA's provisions and

the alleged rights and duties created by the Statute.  The Proposed Amended Complaint does not

attempt to revive any of the state law claims.  Furthermore, the Plaintiffs have not submitted any

8

other response to the arguments raised by the Defendant in its Motion to Dismiss or its brief in support thereof.

Where an issue of fact or law is raised in an opening brief, but it is uncontested in the opposition brief, the issue is considered waived or abandoned by the non-movant in regard to the uncontested issue. Lawlor v. ESPN Scouts, LLC, No. 2:10-cv-05886, 2011 WL 675215, at *2 (D. N.J. Feb. 16, 2011) (citing Conroy v. Leone, 316 Fed. Appx. 140, 144 n.5 (3d Cir. Mar. 9, 2009)). Throw-away arguments left undeveloped are also considered waived. Aiellos v. Zisa, No. 2:09-3076, 2010 WL 421083, at *3 (D.N.J. Feb. 2, 2010) (citing Conroy, 316 Fed. Appx. at 144 n.5).

Applying the above principles of law, we find that the Plaintiffs effectively waived or abandoned all of the claims in their First Complaint. Here the Defendant moved to dismiss all state law claims on grounds of preemption. In "response," the Plaintiffs omitted those claims from their Proposed Amended Complaint and grounded them in ERISA's statutory scheme. We find that offering an amended pleading, which omits the claims that the Defendant sought to dismiss, is akin to leaving issues raised in the Motion to Dismiss "uncontested." Thus, we deem the state law claims abandoned by the Plaintiffs.

The Defendant also moved to dismiss all claims pertinent to the ESPP claiming that we lacked jurisdiction over them because the ESPP is a "non-ERISA plan." (Mot. to Dismiss Br. at 20.) With regard to this argument, the requirement that arguments must be developed cuts against the Defendant. In its Motion to Dismiss, the Defendant cites no statutory provision or case law in support of its assertion. It includes no meaningful analysis explaining why the ESPP currently at issue does not come within the purview of ERISA. Moreover, in certain

circumstances, a plan such as the ESPP can be subject to ERISA.  See Moench v. Robertson, 62

F.3d 553 (3d Cir. 1995) (holding that fiduciaries of Employee Stock Option Plans can be held

liable under ERISA in limited circumstances).

     Because the Defendant's argument is unsupported and undeveloped, we will deny its

Motion to Dismiss the Plaintiffs' ESPP claims contained in the First Complaint on this ground.[6]

However, because the Plaintiffs brought their ESPP claims under state law in their First

Complaint and subsequently pled them as ERISA claims in their Proposed Amended Complaint,

we deem the state law ESPP claims abandoned by the Plaintiffs.

### B.      Plaintiffs Are Not Required to Exhaust Administrative Remedies

     "Except in limited circumstances . . . a federal court will not entertain an ERISA claim

unless the plaintiff has exhausted the remedies available under the plan." Harrow v. Prudential

Ins. Co. of America, 279 F.3d 244, 249 (3d Cir. 2002) (citing Weldon v. Kraft, Inc., 896 F.2d

793, 800 (3d Cir. 1990)).  Courts require exhaustion of administrative remedies "to help reduce

the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for

benefits; to provide a nonadversarial method of claims settlement; and to minimize the cost of

claims settlement for all concerned." Id. (citing Amato v. Bernard, 618 F.2d 559, 567 (9th Cir.

1980)).  Moreover, trustees of an ERISA plan are granted broad fiduciary rights and

responsibilities under ERISA . . . and implementation of the exhaustion requirement will enhance

their ability to expertly and efficiently manage their funds by preventing premature judicial

intervention in their decision-making processes." Id. (citing Amato, 618 F.2d at 567).

---

[6] Nothing in this Opinion precludes the Defendant from raising this argument again at an appropriate time in the future.

A plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so.  Id. (citing Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990)). Plaintiffs merit waiver of the exhaustion requirement when they provide a "clear and positive showing of futility."  Id. (citing Brown v. Cont'l Baking Co., 891 F. Supp. 238, 241 (E.D. Pa. 1995)).  Whether to excuse exhaustion on futility grounds rests on several factors, including: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile.  Of course, all factors may not weigh equally.  Id. at 250 (citing Berger, 911 F.2d at 916-17).

The Third Circuit applies the exhaustion requirement to ERISA benefit claims, but not to claims arising from violations of ERISA's substantive statutory provisions.  Id. at 252 (citing Zipf v. AT&T Co., 799 F.2d 889, 891 (3d Cir. 1990)).  In Zipf, the Third Circuit explained why we do not apply the exhaustion doctrine to claims arising under ERISA's substantive provisions:

> When a plan participant claims that he or she has been unjustly denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries, to whom Congress, in Section 503, assigned the primary responsibility for evaluating claims for benefits . . .. However, when the claimant's position is that his or her federal rights guaranteed by ERISA have been violated, these considerations are simply inapposite.  Unlike a claim for benefits brought pursuant to a benefits plan, a [substantive] claim asserts a statutory right which plan fiduciaries have no expertise in interpreting.  Accordingly, one of the primary justifications for an exhaustion requirement in other contexts, deference to administrative expertise, is simply absent. Indeed, there is a strong interest in judicial resolution of these claims, for the purpose of providing a consistent source of law to help plan

11

fiduciaries and participants predict the legality of proposed actions.

Zipf, 799 F.2d at 892-93.  Traditionally, the Zipf exception was primarily applied to cases

dealing with either: "(1) discrimination claims under § 510 of ERISA, or (2) failure to provide

plaintiffs with summary plans descriptions, as required by ERISA."  Harrow, 279 F.3d at 253

(citing Harrow, 76 F. Supp. 2d 558, 566 n.4 (D.N.J. 1999)).  However, the Third Circuit

expressly holds that Zipf's rationale is equally applicable to claims brought under ERISA for

breach of fiduciary duty because these claims are also statutory.  Id. at 253.

　　　　Nevertheless, a plaintiff cannot circumvent the exhaustion requirement by artfully

pleading benefit claims as breach of fiduciary duty claims.  Id. (citing Drinkwater v. Metro Life

Ins. Co., 846 F.2d 821, 826 (1st Cir. 1988) (exhaustion requirement would be rendered

meaningless if plaintiffs were allowed to bypass exhaustion by artfully dressing contract claims

in statutory clothing)).  When the facts alleged do not present a breach of fiduciary duty claim

that is independent of a claim for benefits, the exhaustion doctrine still applies.  Id. (citation

omitted).  Under ERISA, however, some breach of fiduciary duty claims are "synonymous with a

claim to enforce the terms of a benefits plan."  Stanford v. Foamex L.P., No. 07-4225, 2008 WL

3874823, at *5 (E.D. Pa. Aug. 20, 2008) (citing D'Amico v. CBS Corp., 297 F.3d 287, 291 (3d

Cir. 2002)).

　　　　The Defendant argues that granting Plaintiffs leave to file an Amended Complaint would

be futile because Plaintiffs have not alleged that they have exhausted all administrative remedies

prior to filing the instant suit or that exhaustion would be futile.  (Def.'s Resp. at 5.)  We agree.

Plaintiffs' Proposed Amended Complaint is utterly devoid of any such allegations.  However, the

Plaintiffs' failure to address exhaustion does not necessarily preclude them from litigating their

claims because their claims relate to the Defendant's alleged breach of its fiduciary duties it is possible that they fall within the Zipf exception. Harrow, 279 F.3d at 253. We will address this point more fully below.

The Defendant also argues that the Plaintiffs' breach of fiduciary duty claims are merely artfully pled benefit claims subject to the exhaustion requirement. (Def.'s Resp. at 5, 9.) We disagree and we find that the Plaintiffs' claims are not disguised benefit claims. Significantly, the Plaintiffs do not allege that the Defendant denied their right or entitlement to receive benefits under any of the three Plans at issue at any point in time. In fact, the Plaintiffs candidly admit that they received benefits under the Plans, albeit after considerable delay. (Proposed Am. Compl. ¶¶ 19, 30, 42.) In this respect, the Plaintiffs' claims are distinguishable from those deemed by the Third Circuit to be "benefits in disguise" claims. In Harrow v. Prudential Ins. Co. of America, the plaintiff alleged that the benefit plan failed to cover a particular prescription drug and brought a separate breach of fiduciary duty claim for the same denial. Harrow, 279 F.3d at 252-54. The court concluded that the breach of fiduciary duty claim was nothing more than a disguised benefits claim. Id. at 254. Similarly, in D'Amico v. CBS Corp., the beneficiaries sued to have their benefits declared vested, another benefit that had been denied under the plan. D'Amico, 297 F.3d at 292. The Third Circuit concluded that "exhaustion of plan remedies [was] required for plaintiffs' partial vesting allegations." Id. Based on Harrow and D'Amico, it is apparent that a denial of benefits gives rise to a strong inference that purported breach of fiduciary claims are really benefits claims. In the absence of a denial, however, the inference is simply not present.

We also find that the Defendant's argument that the Plaintiffs' claims are for "benefits"

rests on an unworkable definition of the term because its definition is "irreconcilable with the Third Circuit's conclusion that not all fiduciary duty claims require exhaustion."  Stanford, 2008 WL 3874823, at *6 n.12.  The Third Circuit, unlike other Circuits, does not apply the exhaustion requirement to statutory violations of ERISA such as breaches of fiduciary duty.  Harrow, 279 F.3d at 249 (citing Zipf, 799 F.2d at 891).  Here, the Plaintiffs demand relief in the form of, *inter alia*, "restitution . . . of the diminution of value of the Plan accounts" resulting from the breach of fiduciary duty.  (Proposed Am. Compl. at 10-11.)  The Defendant argues that such a demand is merely a demand for the payment of benefits because the demand is for "payment of benefits which [the Plaintiffs] allege they would have received had PNC not delayed distribution of ERISA benefits and provided Plaintiffs with workable passwords."  (Def.'s Resp. at 9.)  Following the Defendant's logic, all breach of fiduciary duty claims would require exhaustion, even those unrelated to claims for benefits - such as the claims in this case, because success on the breach of fiduciary duty claim would restore lost value to a plan or individual account.  See Stanford, 2008 WL 3874823, at *6 n.12 (rejecting the theory that "benefits are benefits" in context of exhaustion).  Such a result is clearly at odds with the established precedent of this Circuit and we will not adopt the Defendant's definition.  Thus, we find that the Plaintiffs' claims are not for "benefits" requiring exhaustion.

Without making a determination of whether the Plaintiffs have adequately stated their breach of fiduciary duty claims under ERISA, we do find that their claims are independent of a claim for benefits.  The Plaintiffs allege that the Defendant was the administrator and a fiduciary of the Decedent's retirement and other employee benefit plans established pursuant to ERISA. (Proposed Am. Compl. ¶ 6.)  The Plaintiffs further allege that the Defendant breached its

14

fiduciary duties in the following ways: (1) failing to administer and distribute benefits in a timely manner (Id. ¶¶ 55-56, 70, 75); (2) failing to properly distribute benefits (Id. ¶¶ 36-42); (3) failing to provide access to benefit accounts (Id. ¶¶ 21, 32, 44, 50, 54); (4) failing to maintain adequate staff to ensure timely distribution of benefits (Id. ¶ 60); (5) failing to act for the sole benefit of the beneficiaries (Id. ¶¶ 61-62); (6) failing to deal with the Plaintiffs on equal terms (Id. ¶ 63); (7) establishing self-interested procedures to distribute benefits (Id. ¶¶ 41, 64); (8) failing to relinquish control of the Plans in a timely and efficient manner (Id. ¶ 65); and (9) failing to properly advise and guide the Plaintiffs through the administrative and distribution process for the Plans (Id. ¶ 67).  None of the alleged breaches are related to the Plaintiffs' or Decedent's rights under the Plans to receive benefits.  The Plaintiffs' right to receive benefits was never in question and they ultimately received them.  Therefore, the fiduciary duty claims are independent of a claim for "benefits."

Although exhaustion does not provide grounds to deny leave to amend, Plaintiffs must still clear significant substantive hurdles and we will deny leave to amend if the Plaintiffs fail to state cognizable claims under Rule 12(b)(6).  We will address whether the Plaintiffs have sufficiently pled their claims in the following section.

### C.      Claims for Breach of Fiduciary Duty-Count I and II of the Proposed Amended Complaint

In Count I of the Plaintiffs' Proposed Amended Complaint, they allege that "[a]s beneficiaries of the above-described PNC 401K and ES[P]P Plans, [they] are entitled to raise claims against PNC under 29 U.S.C. § 1132(a)."  (Prop. Am. Compl. ¶ 72.)  The Plaintiffs do not cite to any statutory provision in Count II, but we assume that they incorporate § 1132(a) by

reference.  It appears that the Plaintiffs based their amended Count I and Count II on § 1132(a) in

response to the Defendant's Motion to Dismiss (Doc. No. 3), wherein the Defendant argued that

the Plaintiffs' claims in their original Complaint were pre-empted by the same section.

Unfortunately, the Plaintiffs have failed to identify the subsection of § 1132(a) under which they

allege that they are entitled to raise claims for the Defendant's alleged breach of fiduciary duties.

In response to the Plaintiffs' ambiguity, the Defendant systematically argues that they have failed

to state claims under each of § 1132(a)'s subsections.  We will address each argument in turn.

1.      Plaintiffs fail to state claims under 29 U.S.C. § 1132(a)(1)(B)

Under § 1132(a)(1)(B), a beneficiary may sue to recover benefits due to him *under the*

*terms of the plan*, to enforce his rights *under the terms of the plan*, or to clarify his rights to

future benefits *under the terms of the plan*.  29 U.S.C. § 1132(a)(1)(B) (emphasis added).  In a

claim brought under this section, the defendant is the plan itself or the plan administrators in their

official capacity only.  Graden v. Conexant Sys. Inc., 496 F.3d 291, 301 (3d Cir. 2007) (citing

Chapman v. ChoiceCare Long Island Term Disability Plan, 288 F.3d 506, 509-10 (2d Cir.

2002)).  The subsection thus provides a cause of action only where a plaintiff alleges a violation

of the terms of a benefits plan or an ambiguity in the plan requiring judicial interpretation.

Eichorn v. AT&T Corp., 484 F.3d 644, 652 (3d Cir. 2007).  By comparison, an action to recover

for a breach of fiduciary duty is different from an action to recover plan benefits under

§ 1132(a)(1)(B).  Richards v. Gen. Motors Corp., 850 F. Supp. 1325, 1331 (E.D. Mich. 1994)

(citing Anweiler v. Am. Elec. Power Serv. Corp., 3 F.3d 986, 992 (7th Cir. 1993)).  When a

claim is for breach of fiduciary duty, it must be brought under § 1132(a)(2) or possibly under

§ 1132(a)(3).  Id.; see also Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension

Plan, 24 F.3d 1491, 1501 (3d Cir. 1994) (holding that § 1132(a)(1)(B) is unavailable in actions for breach of fiduciary duty).

The Defendant argues that the Plaintiffs cannot bring their claims under this section as a matter of law because they are breach of fiduciary duty claims.  We agree.  As we stated above, § 1132(a)(1)(B) is unavailable in actions for breach of fiduciary duty.  Haberern, 24 F.3d at 1501 (3d Cir. 1994).  Plaintiffs' Count I and Count II exclusively allege breach of fiduciary duty as we discussed in the above section regarding exhaustion.[7]  The gravamen of the Plaintiffs' claims is that the Defendant improperly administered and distributed the payment of benefits, not that the Defendant has breached the terms of the Plans themselves.  Thus, we find that the Plaintiffs cannot bring their breach of fiduciary duty claims under § 1132(a)(1)(B).  Accordingly, we find that granting the Plaintiffs leave to amend to bring Count I and Count II under this section would be futile.

  2.  Plaintiffs sufficiently allege claims under 29 U.S.C. § 1132(a)(2)

Section 1132(a)(2) authorizes a plan beneficiary to sue for "appropriate relief" to enforce ERISA § 409(a), 29 U.S.C. § 1109(a).  29 U.S.C. § 1132(a)(2).  Section 1109(a) imposes personal liability on fiduciaries for breaching their fiduciary duties and provides, in relevant part:

> . . . a fiduciary . . . who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets

---

[7] We note that the Defendant's arguments are contradictory.  In arguing that the Plaintiffs have failed to state claims under § 1132(a)(1)(B), the Defendant argues that Count I and Count II are properly characterized as breach of fiduciary duty claims.  (Mot. to Dismiss Br. at 7.)  However, in arguing that the Plaintiffs have failed to state claims under § 1132(a)(3), the Defendant argues that Count I and Count II are really claims for benefits.  (Id. at 8-9.)

of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

The Defendant argues that the Plaintiffs have failed to state a claim under § 1132(a)(2) as a matter of law.  It relies on Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134 (1985) for the proposition that the Plaintiffs may not bring claims seeking individual relief and may only seek relief on behalf of the plan, which they have failed to do.  In Russell, the respondent submitted a claim for disability benefits to her employer who allegedly improperly delayed processing the claim.  Id. at 136-37.  As a result of the delay, the respondent alleged that her disabled husband was required to cash out his retirement savings, which further aggravated her disability.  Id. at 137.  Despite the delay in approving her benefits claim, the respondent ultimately received all the benefits due to her under the terms of the Plan.  Id.  Nevertheless, the respondent alleged that she was entitled to recover extra-contractual damages under § 1132(a)(2) for the damages she incurred as a result the delay, which she deemed a breach of fiduciary duty under § 1109(a).  Id. at 137-38.  The Supreme Court found that relief under § 1109(a) could only be obtained on behalf of "the plan itself."  Id. at 147.  Therefore, it concluded that the remedies requested by the respondent under § 1132(a)(2) were limited to those protecting the entire plan, rather than the rights of an individual beneficiary.  Id. at 142.

The Supreme Court has re-examined its holding in Russell in light of the changing "landscape of employee benefit plans."  LaRue v. DeWolff, Boberg & Assocs, Inc., 552 U.S. 248, 254-55 (2008).  In LaRue, the court decided the issue of "whether [§ 1132(a)(2)] authorizes a participant in a defined contribution pension plan to sue a fiduciary whose alleged misconduct

18

impaired the value of plan assets in the participant's individual account." Id. at 250.  The

petitioner claimed that he directed his employer to make certain changes to investments in his

individual account, which the employer never made. Id. at 251.  As a result of the omission, the

plaintiff claimed that his interest in the plan had been depleted by approximately $ 150,000, and

amounted to a breach of fiduciary duty under ERISA. Id.  In the district court, the petitioner

sought "make-whole" or other equitable relief as allowed by § 1132(a)(3) as well as "such other

and further relief as the court deems just and proper." Id.  The district court granted the

respondent's motion for judgment on the pleadings finding that the defendant did not possess any

funds that rightly belonged to the petitioner and that he was seeking damages rather than

equitable relief available under § 1132(a)(3). Id.  On appeal to the Fourth Circuit, the petitioner

argued that he had cognizable claims under § 1132(a)(2) and § 1132(a)(3). Id.  With regard to

the petitioner's § 1132(a)(2) claim, the Court of Appeals relied on Russell, which it interpreted as

allowing only remedies that would benefit the entire plan under § 1132(a)(2), and it found that

the petitioner's individual remedial interest could not serve as a legitimate proxy for the plan in

its entirety. Id. at 252 (citing 450 F.3d 570, 574 (4th Cir. 2006)).

The Supreme Court reversed the Court of Appeals on the § 1132(a)(2) issue.  The

Supreme Court distinguished its holding from Russell, noting that Russell's emphasis on

protecting the "entire plan" from fiduciary misconduct reflected the former landscape of

employee benefit plans, which was dominated by the defined benefit plan. Id. at 254.  In

contrast, when the Supreme Court decided LaRue, most employee benefit plans were defined

contribution plans. Id. at 255.  And so, unlike the case that was currently before it, the plan in

Russell did not have individual accounts; it paid a fixed benefit based on a percentage of the

employee's salary.  Id.  The Supreme Court held that Russell's "entire plan" language spoke to

the impact of § 1109 on plans that pay defined benefits only.  Id.  It stated that "[m]isconduct by

the administrators of a defined benefit plan will not affect an individual's entitlement to a defined

benefit unless it creates or enhances the risk of default by the entire plan.  It was that risk that

prompted Congress to require defined benefit plans (but not defined contribution plans) to satisfy

complex minimum funding requirements, and to make premium payments to the Pension Benefit

Guaranty Corporation for plan termination insurance."  Id.  In contrast, the Supreme Court stated

that "[f]or defined contribution plans, however, fiduciary misconduct need not threaten the

solvency of the entire plan to reduce benefits below the amount that participants would otherwise

receive.  Whether a fiduciary breach diminishes plan assets payable to all participants and

beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms

that concerned the draftsmen of § 1109."  Id. at 255-56.  Consequently, the Supreme Court found

that the "entire plan" language in Russell was simply beside the point in the defined contribution

context.  Id. at 256.  Thus, it held that while § 1132(a)(2) "does not provide a remedy for

individual injuries distinct from plan injuries, that provision does authorize recovery for breaches

of fiduciary duties that impair the value of the plan assets in a participant's individual account."

Id.  In light of LaRue, we find the Defendant's argument that the Plaintiffs have failed to state a

claim as a matter of law under § 1132(a)(2) because it does not provide a remedy for individuals

to be untenable.

    We further find that LaRue authorizes the individualized recovery sought by the Plaintiffs

and that granting leave to file an amended pleading would not be an exercise in futility because

the Plaintiffs have sufficiently pled a claim under § 1132(a)(2).  The Plaintiffs allege that the

Defendant was the administrator and a fiduciary of the Decedent's retirement and other employee benefit plans established pursuant to ERISA.  (Proposed Am. Compl. ¶ 6.)  The Plaintiffs further allege that the Defendant breached its fiduciary duties in the following ways: (1) failing to administer and distribute benefits in a timely manner (Id. ¶¶ 55-56, 70, 75); (2) failing to properly distribute benefits (Id. ¶¶ 36-42); (3) failing to provide access to benefit accounts (Id. ¶¶ 21, 32, 44, 50, 54); (4) failing to maintain adequate staff to ensure timely distribution of benefits (Id. ¶ 60); (5) failing to act for the sole benefit of the beneficiaries (Id. ¶¶ 61-62); (6) failing to deal with the Plaintiffs on equal terms (Id. ¶ 63); (7) establishing self-interested procedures to distribute benefits (Id. ¶¶ 41, 64); (8) failing to relinquish control of the Plans in a timely and efficient manner (Id. ¶ 65); and (9) failing to properly advise and guide the Plaintiffs through the administrative and distribution process for the Plans (Id. ¶ 67).  As a result of these actions, the Plaintiffs allege that the value of the Plans was greatly diminished.  (Id. at ¶ 68.)  We find that the foregoing allegations are sufficient to survive a motion to dismiss.  Thus, we will allow the Plaintiffs leave to amend so that they may proceed with their breach of fiduciary duty claims under § 1132(a)(2).[8]

### D.  Claim for Breach of the Duty to Inform Under 29 U.S.C. § 1132(c)-Count III

Section 1132(c) is a penalty provision crafted to ensure that plan administrators supply requested or required information to the plan participant or beneficiary.  29 U.S.C. § 1132(c).  It provides:

---

[8] Because we find that the Plaintiffs may bring their claims under § 1132(a)(2), we do not reach the question of whether they may seek equitable relief under § 1132(a)(3).  See Varity Corp. v. Howe, 516 U.S. 489, 512 (describing § 1132(a)(3) as a "catchall" provision only applicable for violations in which § 1132(a)(2) provides no remedy).

(1) Any administrator

(A) who fails to meet the minimum requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title, section 1021(f) of this title, or section 1025(a) of this title with respect to a participant or beneficiary, or

(B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.  For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

29 U.S.C. § 1132(c)(1).  In Count III of the Plaintiffs' Proposed Amended Complaint, they allege that the Defendant violated § 1132(c)(1) by failing to adequately advise them of their rights and entitlements as beneficiaries of the Plans, in violation of ERISA requirements.  (Proposed Am. Compl. ¶ 77.)  The Plaintiffs further allege that the Defendant failed to comply with requests to furnish working passwords to access their beneficiary accounts.  (Id. ¶¶ 22, 33, 50-54.)  As a result of the alleged breaches, the Plaintiffs claim that the Defendant is liable "for penalties of $110 per day."  (Id. ¶ 78.)  The Defendant argues that we should dismiss Plaintiffs' Count III because the Plaintiffs have not plead or identified the information that the Defendant was bound to provide them.  We agree that the Plaintiffs have not sufficiently alleged a claim under § 1132(c)(1) but for reasons different than those argued by the Defendant.

In this case, the Plaintiffs have specifically alleged that they requested working passwords

and password information from the Defendant.  (Proposed Am. Compl. ¶¶ 22, 33, 50-54.)

However, we are mindful that § 1132(c)(1)(B) only imposes liability on a plan administrator who

"fails or refuses to comply with a request for any information which such administrator is

required *by this subchapter* to furnish to a participant or beneficiary."  29 U.S.C. § 1132(c)(1)(B)

(emphasis added).  The Third Circuit gives the term "any information" its broad, everyday

meaning.  Groves v. Modified Ret. Plan for Hourly Paid Emps. of the Johns Mansville Corp.,

803 F.2d 109, 114 (3d Cir. 1986).  However, the information requested must still relate to a

provision within subchapter I of ERISA.  In this case, the Plaintiffs fail to identify the

corresponding provision within the statute that relates to the passwords which they requested.

Thus, we find that Plaintiffs' Count III, as amended, does not state a claim upon which relief can

be granted, and the amendment is, therefore, futile.

## IV.    CONCLUSION

        With regard to the Defendant's Motion to Dismiss the Plaintiffs' First Complaint, we find

that the Plaintiffs have waived all claims contained therein.  We further find that the Defendant

has failed to provide adequate justification to dismiss the Plaintiffs' ESPP claims at this time.

With regard to the Plaintiffs' Motion for Leave to File an Amended Complaint, we find that the

exhaustion requirement is inapplicable to the Plaintiffs' claims because they are alleging

statutory violations of ERISA.  We further find that the Plaintiffs have stated claims for which

relief can be granted in Count I and Count II under 29 U.S.C. § 1132(a)(2) in light of the

Supreme Court's decision in LaRue.  Furthermore, we find that the Plaintiffs have failed to state

a cause of action for which relief can be granted in Count III of their Proposed Amended

Complaint because they fail to allege which of ERISA's provisions contained in subchapter I

relates to the disclosure of beneficiary account passwords.  Finally, we will grant the Plaintiffs leave to file a further amended complaint to properly set forth their claims and to cure any deficiencies.

An appropriate Order follows.